Rachel E. Kaufman (CSB# 259353)
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR RIVERA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>CALIFORNIA REAL PROPERTY, INC., a California corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Edgar Rivera ("Plaintiff Rivera" or "Rivera") brings this Class Action Complaint and Demand for Jury Trial against Defendant California Real Property, Inc. d/b/a Maher Commercial Realty ("Defendant Maher Commercial Realty") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited pre-recorded calls without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's

conduct. Plaintiff Rivera, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Rivera is a resident of Lakewood, Colorado.

2. Defendant Maher Commercial Realty is a California registered corporation headquartered in Beverly Hills, California. Defendant Maher Commercial Realty conducts business from this District, and throughout the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is located in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and directed its wrongful conduct from here.

## INTRODUCTION

6. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 3.8 billion robocalls were placed in September 2026 alone, at a rate of 128 million per day. www.robocallindex.com (last visited October 11, 2026).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and

232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. California Real Property, Inc. operates using the d/b/a Maher Commercial Realty:

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

| | |
|---|---|
| **License Type:** | CORPORATION |
| **Name:** | California Real Property, Inc |
| **Mailing Address:** | 9903 S SANTA MONICA BLVD<br>BEVERLY HILLS, CA 90212 |
| **License ID:** | 02062365 |
| **Expiration Date:** | 08/07/30 |
| **License Status:** | LICENSED |
| **Corporation License Issued:** | 05/30/18 |
| **Former Name(s):** | NO FORMER NAMES |
| **Main Office:** | 275 S BEVERLY DR STE 100<br>BEVERLY HILLS, CA 90212 |
| **Licensed Officer(s):** | DESIGNATED OFFICER<br>01299093 - Expiration Date: 08/07/30<br>Maher, Oron |
| **DBA** | California Real Property<br>ACTIVE AS OF 11/18/2020<br><br>Maher Commercial Realty<br>ACTIVE AS OF 05/24/2019 |

[3]

15. Defendant Maher Commercial Realty is a full-service commercial real estate brokerage.[4]

16. To promote its services and generate business, Maher Commercial Realty engages in telemarketing campaigns directed at consumers, property owners, and prospective customers throughout the United States.

17. These campaigns include the use of pre-recorded voice message calls.

18. Maher Commercial Realty is open about placing cold calls to generate business.

19. California Real Property, Inc. also owns Maher Probate Realty.[5]

---

[3] https://www2.dre.ca.gov/publicasp/pplinfo.asp?License_id=02062365
[4] https://www.linkedin.com/company/mahercommercialrealty/about/
[5] https://www2.dre.ca.gov/publicasp/pplinfo.asp?License_id=02062365

20. The Maher Probate Realty website reveals that it has a cold calling team:



[6]

21. On the Maher Commercial Realty website, the Defendant states that it can make thousands of cold calls:


MAHER COMMERCIAL REALTY

Why Choose a CRE Professional from Maher Commercial Realty?

We put our clients' needs first in everything we do. Our company culture is one of zealous representation, specialized knowledge and long-term client relationships. We have the in-house ability to do more than most when it comes to selling listings. For example, we can send over 250,000 marketing emails, make thousands of cold calls, and research and identify unique potential purchasers within our network. These are just some of the many marketing tools we have for you. We believe that if we deliver for you today, we have built a client for life.
[7]

22. Nomorobo.com, a robocall-blocking service captured a pre-recorded voice message call that was received from Maher Commercial Realty on April 16,

[6] https://web.archive.org/web/20260610155859/https://maherprobaterealty.com/team/
[7] https://www.mahercr.com/faq/

2026. Like the pre-recorded voicemail that the Plaintiff received, this voicemail begins with a generic greeting, a recitation of current listings, and a request for a call or email:



[8] [9]

23. The prerecorded calls received by Plaintiff and captured by Nomorobo came from different telephone numbers and on different dates but both promoted Defendant Maher Commercial Realty's services, showing that Defendant was not limited to a single telephone number or isolated occurrence.

24. Other consumers have posted complaints about unsolicited calls that they received from Maher Commercial Realty, including:

[8] https://www.nomorobo.com/lookup/13108076971
[9] https://nomorobo-twilio-recordings.s3.amazonaws.com/honeypot/05a11790-39c1-11f1-93a7-637589e0f7de

M Maxgerard
3 reviews
★☆☆☆☆ 5 months ago

I received a restricted call from this business, which only left me a voicemail . The call ended as soon as I picked up... Typical marketing tactic.

I do not appreciate these tricky sales calls and this is not the right way to reach people. [10]

25. In response to these calls, Plaintiff Rivera brings this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, and an award of statutory damages to the members of the Class and costs.

## PLAINTIFF RIVERA'S ALLEGATIONS

26. Plaintiff Rivera is the subscriber and the sole user of the cell phone number ending with 5938.

27. On May 4, 2026 at 3:56 PM, Plaintiff received an unsolicited call to his cell phone from 310-947-8940.

28. This call was not answered, but a pre-recorded voicemail was left stating:

> "Attention retail owners. This is the triple net division at Maher Commercial Realty and we have some great trip net listings to share with you. We just listed a Walgreens in Claremore, Oklahoma at 8% cap. A turn-key Chevron gas station in Brawley, California. An unbranded gas station at Red Bluff, California which includes a 4000 square foot more for less market. Our team just completed the sale of a triple net lead Chase bank with a 19,000 square foot office building accompanying it in Los Angeles, California for $6.1 million. And we just closed escrow on a triple net leased O'Reilly's Auto Parts with 11 years remaining in Gallup, New Mexico for a 7% cap rate. And we've got a lot of other triple net leased and retail sites for sale and on the market.

[10] https://tinyurl.com/bdeybc8w

So if you would like any information on these opportunities, or you would like a market evaluation of your retail or triple net leased property, please call is at 310-947-8940. 310-947-8940. Or you can email Oron@mahercr.com. That's 'O' 'R' 'O' 'N' as in Nancy @ 'm' as in Mary "A" "H" "E" "R" and then "C" "R" short for 'commercial realty' .com. Thank you very much."

29. The pre-recorded voicemail that Plaintiff Rivera received is a solicitation in that it encourages the purchase of Defendant Maher Commercial Realty's real estate services.

30. Plaintiff Rivera could easily identify the fact that the voicemail was pre-recorded because it is addressed to "retail owners", the content of the message is generic, it sounds scripted, the message does not contact any unnatural pauses, or indications that it is being spoken naturally, rather it is spoken in a steady monotone, the callback number is read back twice, and the email is spelled out letter-by-letter as if it's intended for a recipient who wouldn't be expecting the call.

31. The email that is provided in the voicemail is for Oron Maher, the broker director of Maher Commercial Realty:



[11]

32. Plaintiff Rivera has never provided his cell phone number to Defendant Maher Commercial Realty in any context.

33. Plaintiff Rivera listened to the full pre-recorded voicemail that he received from Maher Commercial Realty.

34. The unauthorized pre-recorded message call that Plaintiff received from the Defendant has harmed Plaintiff Rivera in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

---

[11] https://www.mahercr.com/contact/

35. Seeking redress for these injuries, Plaintiff Rivera, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

36. Plaintiff Rivera brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) received a call from Defendant on their cellular telephone number (2) using an artificial or pre-recorded voice.

37. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Rivera anticipates the need to amend the Class definition following appropriate discovery.

38. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

39. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant placed calls using an artificial voice or pre-recorded voice to Plaintiff and members of the Pre-recorded No Consent Class;

(b) whether Defendant places these calls without first obtaining consent to make the calls;

(c) whether the calls constitute a violation of the TCPA;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

40. **Adequate Representation**: Plaintiff Rivera will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Rivera has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Rivera and his counsel are committed to vigorously prosecuting this action on behalf

of the members of the Class, and have the financial resources to do so. Neither Plaintiff Rivera nor his counsel have any interest adverse to the Class.

41. **Appropriateness**: This class action is also appropriate for certification because the Defendant acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Rivera. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rivera and the Pre-recorded No Consent Class)**

42. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

43. The Defendant transmitted unwanted telephone calls to Plaintiff Rivera and the other members of the Pre-recorded No Consent Class using an artificial or pre-recorded voice.

44. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

45. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Rivera requests a jury trial.

**EDGAR RIVERA**, individually and on behalf of all others similarly situated,

DATED this 19th day of November, 2026.

By: /s/ *Rachel E. Kaufman*
Rachel E. Kaufman
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*